2009-61024
FILED
March 12, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002479049

JEFFER, MANGELS, BUTLER & MARMARO LLP
ROBERT B. KAPLAN (Bar No. 76950)
WALTER W. GOULDSBURY III (Bar No. 240230)
Two Embarcadero Center, Fifth Floor
San Francisco, California 94111-3813
Telephone: (415) 398-8080
Facsimile: (415) 398-5584

Attorneys for WELLS FARGO BANK, N.A. and
WELLS FARGO EQUIPMENT FINANCE, INC,

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

FRANK J. GOMES DAIRY, a
California limited partnership,

Debtor.

CASE NO. 09-61024-A-11

CHAPTER 11

DOCKET CONTROL NO.: HAR-4

Date: March 10, 2010
Time: 1:30 p.m.
Judge: Honorable Whitney Rimel
Place: 1300 18th Street, First Floor,
Bakersfield, California

**ORDER GRANTING MOTION FOR AUTHORIZATION TO SELL
MILK POOL QUOTA AND FOR USE OF CASH COLLATERAL**

On March 10, 2010, the hearing on Motion for Authorization to Sell Milk Pool Quota and for Use of Cash Collateral ("Motion"), filed by Frank J. Gomes Dairy, a California limited partnership (the "Debtor") came on for hearing before the Honorable Whiney Rimel, Bankruptcy Judge at 1:30 p.m. Hilton A. Ryder, Esq. of McCormick Barstow LLP appeared for the Debtor and Robert B. Kaplan, Esq. of Jeffer, Mangels, Butler & Marmaro appeared for Wells Fargo Bank, N.A. (the "Bank") and Wells Fargo Equipment Finance, Inc. ("WFEFI"), and other appearances were as noted in the record. The Court, having heard the oral arguments of counsel,

RECEIVED
March 11, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002479049

1  ORDER GRANTING MOTION FOR
   AUTHORITY TO SELL MILK POOL QUOTA

and the Bank and the Debtor having stipulated to the following order ("Order") and good cause appearing therefor:

IT IS HEREBY ORDERED as follows:

1. The Motion is hereby GRANTED on an interim basis, and any objections to the Motion are hereby OVERRULED. The Debtor is hereby authorized to sell the Milk Pool Quota Certificate No. 35804 ("Certificate"), totaling solid - non-fat of 2,454.41 pounds, to Manuela O. Godinho, Trustee of the Manuela O. Godinho 2001 Trust or its nominee for the sum of $400 per pound or total purchase price of $981,764.

2. The Debtor shall deposit all net proceeds of sale received from the sale of the Certificate which is the subject of the Motion in the approximate amount of $980,000 into a newly established debtor-in-possession account, to be opened at the Bank, on or before April 2, 2010 ("Pool Quota Account"). The Debtor shall be permitted to purchase cows from the proceeds of sale of the Certificate deposited in the Pool Quota account. Commencing on Monday, April 5, 2010 and continuing every Monday thereafter, the Debtor shall deliver to the Bank a written report which contains copies of invoices or brand inspection reports for the cows purchased by the Debtor for the preceding week.

3. Commencing on May 2, 2010 and continuing on the 2nd day of each and every month thereafter through and including December 2, 2010 (except as set forth below in section 4), the Debtor shall pay to the Bank the principal sum of $40,000.00 which shall be applied to the outstanding principal obligations due and owing by the Debtor to the Bank in such order and priority as the Bank shall determine in its sole discretion. The Bank shall be permitted to automatically debit the debtor-in-possession account previously established by the Debtor with the Bank, Account No. 4121-991988 ("DIP Account") in order to make these monthly principal payments, subject to the condition that the Bank deliver to the Debtor via mail or facsimile an invoice in the amount of $40,000.00 at least 5 calendar days prior to debiting the DIP Account (the "$40,000 Invoice Notice").

4. Commencing on the earlier of the following dates and on continuing monthly thereafter as set forth below in section 5 (any such date, a "Trigger Date"), the Debtor shall pay to

the Bank the total monthly principal sum of $125,000.00, which shall be applied to the outstanding principal obligations due and owing by the Debtor to the Bank in such order and priority as the Bank shall determine in its sole discretion:

    a. January 2, 2011 and continuing on the 2nd day of each and every month thereafter;

    b. The 2nd calendar day of the month following the date of the Bank's receipt of a monthly statement from the Dairy Herd Improvement Association (the "DHIA Statement") which states that the Debtor owns 3,500 or more cows (the "Cow Trigger") (which DHIA Statement shall be delivered to the Bank on the 3rd Thursday of each month or within 3 calendar days of the Debtor's receipt of the DHIA Statement which shall be no later than the 23rd calendar day of each month, whichever is later);

    c. The 7th calendar day of the month in which the Bank receives a creamery advance statement which states that the Debtor's cows are producing 26,350 average gallons per day (the "Gallon Trigger") (which creamery advance statement shall be delivered to the Bank directly from Saputo Cheese (or from the Debtor directly if Saputo Cheese fails to deliver the creamery advance statement to the Bank directly)) on the first and fifteenth calendar day of each month; or

    d. The 21st calendar day of the month in which the Bank receives a creamery advance statement on the fifteenth calendar day of the month which states a Gallon Trigger has occurred.

The Bank shall be permitted to automatically debit the DIP Account to make these monthly principal payments, as follows (i), as to a Trigger Date based on the Cow Trigger, the Bank shall be permitted to debit the DIP Account in the amount of $125,000.00 on the 2nd calendar day of the month subject to the condition that the Bank deliver to the Debtor via mail or facsimile an invoice in the amount of $125,000.00 at least 3 calendar days prior to debiting the DIP Account, and (ii) as to a Trigger Date based on a Gallon Trigger, the Bank shall be permitted to debit the DIP Account in the amount of $40,000.00 on the 2nd calendar day of each month upon the Bank's compliance with $40,000 Invoice Notice and to thereafter debit the DIP Account for the additional

principal payment of $85,000.00 on the 7th or 21st calendar day of that same month, subject to the condition that the Bank deliver to the Debtor via mail or facsimile an invoice in the amount of $85,000.00 at least 3 calendar days prior to debiting the DIP Account.

5. Once a Trigger Date occurs, the Debtor shall be obligated to make monthly principal payments to the Bank of $125,000.00 on the 2nd calendar day of each month following the Trigger Date notwithstanding (i) any decrease in the number of cows owned by the Debtor below 3,500 cows, or (ii) any decrease in the average number of gallons per day being produced by the Debtor's cows below 26,350 gallons.

6. In addition to the monthly reporting required to be delivered by the Debtor to the Bank as set forth in paragraphs 2 and 4 above, the Debtor will notify the Bank in writing on the 15th day of each calendar month, along with the reconciliation report of income and expenses being provided to the Bank pursuant to the Final Order (as hereinafter defined) of the number of cows it owns as of the last day of the preceding month and of the average daily gallons being produced by those cows as of the last day of the preceding calendar month.

7. In the event the Debtor fails to timely and punctually pay to the Bank the monthly payments required to be paid pursuant to sections 2, 3, and 4 above, the Debtor shall be prohibited from using any proceeds of the sale of the Certificate deposited into the Pool Quota Account to purchase cows or for any other purpose, without further notice from the Bank.

8. In order to provide adequate protection to the Bank and WFEFI for the Debtor's use of their cash collateral arising from the sale of the Certificate ("Certificate Cash Collateral"), the Debtor hereby grants to the Bank and WFEFI a lien and security interest (the "Pool Quota Lien") in the Certificate Cash Collateral and all assets of the Debtor acquired therefrom including, without limitation, all cows acquired by the Debtor, in order to secure the Bank's and WFEFI's claims against the Debtor to the extent that the Debtor's use of Certificate Cash Collateral results in a diminution of the value of the collateral in which the Bank and WFEFI hold a valid, perfected, and enforceable security interest as of November 12, 2009; provided however that the Pool Quota Lien shall have the same scope, validity, perfection, relative priority and enforceability as the Bank's and WFEFI's security interests arising prior to the date of the Debtor's bankruptcy

976002v2                        4    ORDER GRANTING MOTION FOR
                                     AUTHORITY TO SELL MILK POOL QUOTA

filing. The Pool Quota Lien shall be valid, perfected, and enforceable without any further action by the Debtor, the Bank and WFEFI and without the execution, filing, or recording of any financing statements, security agreements, or other documents. The Pool Quota Lien provided to the Bank and WFEFI pursuant to the terms of this Order shall be an addition to all other replacement liens previously provided to the Bank and WFEFI.

Dated:

Mar 12, 2010

*[Signature]*
United States Bankruptcy Judge

**Approved as to Form and Content**:

MCCORMICK BARSTOW LLP

By: /s/ Hilton A. Ryder
    HILTON A. RYDER, ESQ.
    Attorneys for Debtor